IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| GENZYME CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>WATSON LABORATORIES, INC.,<br><br>Defendant. | C.A. Nos. 1:10-cv-01323-JFM<br>1:10-cv-01863-JFM |

## RULE 26(f) DISCOVERY PLAN

Plaintiff Genzyme Corporation ("Genzyme") and Defendant Watson Laboratories, Inc. ("Watson") have conferred pursuant to Fed. R. Civ. P. 26(f). The parties hereby submit this proposed jointly-prepared discovery plan for the Court's consideration.

### 1. Brief Description of the Case and Issues In Suit

This is a patent infringement action brought by Genzyme under the Hatch-Waxman Act. Genzyme holds an approved new drug application ("NDA") No. 022-127 for Renvela® tablets (800 mg) and NDA No. 022-318 for Renvela® powder (2.4 g and 0.8 g packets), which products contain the active ingredient sevelamer carbonate. Genzyme's Renvela® tablets and Renvela® powder are approved by the United States Food and Drug Administration ("FDA") for the control of serum phosphorus in patients with chronic kidney disease on dialysis. Genzyme also owns U.S. Patent No. 5,667,775 ("'775 patent"), which claims, among other things, pharmaceutical compositions and methods of using sevelamer carbonate.

Genzyme alleges that Watson has infringed the '775 patent by filing Abbreviated

New Drug Applications ("ANDAs"), seeking FDA approval to engage in the commercial manufacture, use, sale and/or importation into the United States of 800 mg sevelamer carbonate tablets ("Watson's Sevelamer Carbonate Tablets") and 2.4 g and 0.8 g sevelamer carbonate packets ("Watson's Sevelamer Carbonate Powder") prior to the expiration of the '775 patent.

Watson has asserted affirmative defenses and counterclaims alleging that Watson's Sevelamer Carbonate Tablets and Sevelamer Carbonate Powder do not infringe the '775 patent, that Watson does not induce infringement of, nor contributorily infringe, the '775 patent, and that the claims of the '775 patent are invalid under one or more of 35 U.S.C. §§ 101, 102, 103, 112, 282, and/or the doctrine of obviousness-type double patenting.

The parties believe that the principal issues to be resolved in this case are:

(i)   the infringement vel non of claim 22 of the '775 patent by Watson's Sevelamer Carbonate Tablets;

(ii)  the infringement vel non of claim 22 of the '775 patent by Watson's Sevelamer Carbonate Powder;

(iii) Watson's contributory infringement and/or inducement of infringement vel non of claim 22 of the '775 patent;

(iv)  the validity vel non of claim 22 of the '775 patent.

Also pending before this Court are various actions in which Genzyme asserts infringement of claim 22 of the '775 patent against other ANDA filers: Civil Action Nos. 09-cv-0653, 09-cv-0846, 09-cv-1750, 09-cv-2589, 10-cv-1715, 10-cv-1791, and 11-cv-1103. These actions are referred to collectively herein as the "Related Actions."

### 2. Subjects On Which Discovery May Be Needed

#### a. Genzyme's Statement

On the issue of infringement, Genzyme will need fact and expert discovery of

documents and testimony concerning following matters:

    (i)    The research and development of Watson's Sevelamer Carbonate Tablets;

    (ii)    The composition and characteristics of Watson's Sevelamer Carbonate Tablets;

    (iii)    The research and development of Watson's Sevelamer Carbonate Powder; and

    (iv)    The composition and characteristics of Watson's Sevelamer Carbonate Powder.

On the issue of inducement of infringement and/or contributory infringement, Genzyme will need fact and expert discovery of documents and testimony concerning the following matters:

    (i)    The regulatory approval process for Watson's Sevelamer Carbonate Tablets, including without limitation the indication for which those tablets will be approved;

    (ii)    The expected marketing of Watson's Sevelamer Carbonate Tablets, including without limitation the indications for which those tablets will be marketed;

    (iii)    The regulatory approval process for Watson's Sevelamer Carbonate Powder, including without limitation the indication for which those packets will be approved; and

    (iv)    The expected marketing of Watson's Sevelamer Carbonate Powder, including without limitation the indications for which those packets will be marketed.

On the issue of the validity of the '775 patent, Genzyme will need fact and expert discovery of documents and testimony concerning the state of the art, and the understanding of a hypothetical person of ordinary skill in the art, at the time of invention of the subject matter claimed in the '775 patent.

Genzyme also will need discovery of Watson's other claims or contentions, to the

extent that they are not encompassed by the issues described above.

### b.   Watson's Statement

Watson believes that some discovery will be required in these cases, but that it will be limited in light of the fact that only a single patent claim is at issue[1] and that the parties may be able to take advantage of discovery taken in the Related Actions.

Subject to its review of the discovery Genzyme previously has provided in the Related Actions, Watson believes that the scope of discovery Genzyme will require on its allegations of infringement (including indirect infringement) should be narrow.

On the issues of infringement (including indirect infringement), Watson will need fact and expert discovery regarding the facts underlying Genzyme's allegations of patent infringement, including but not limited to discovery tending to contradict Genzyme's allegations.

On the issues on invalidity, Watson will need fact and expert discovery regarding:

(i)   the prosecution of the patent applications that led to the issuance of the '775 patent;

(ii)  the state of the art, and the understanding of a hypothetical person of ordinary skill in the art, at the time of invention of the subject matter of claim 22 of the '775 patent;

(iii) the content of the prior art relevant to claim 22 of the '775 patent, and the understanding of Genzyme, the named inventors, and their representatives regarding that prior art;

(iv)  the differences (if any) between the prior art and claim 22 of the '775 patent;

(v)   the overlap and of identity of the subject matter of claim 22 of the '775 patent with other patent coverage obtained by the applicant; and,

(vi)  the research and development that led to claim 22 of the '775 patent

---

[1] Watson's proposals herein are based on the assumption that Genzyme will assert only claim 22 of the '775 patent against Watson. Claim 22 is the only claim Genzyme has asserted against defendants in the Related Actions.

3. **Proposed Discovery Schedule**

Pursuant to Fed. R. Civ. P. 26(f), the parties have agreed the following proposed schedule for pretrial proceedings.

| Event | Date pursuant to Maryland Local Rules [L. Civ. R. __] | Joint Proposal |
|---|---|---|
| Initial Scheduling Conference | [R. 802; R. 104.4] | To be requested jointly by the parties for the Court's earliest convenient date |
| Initial Disclosures | | 01/11/2012 |
| Plaintiff produces a copy of its Rule 34 production, written discovery responses, and depositions given by it and its current and former employees in the Related Actions | | 01/18/2012 |
| Parties may begin to exchange discovery requests | | 01/20/2012 |
| Defendant produces entire ANDA | 30 days from the date of the Scheduling Order with Invalidity & Non-Infringement Contentions [R. 804.3(c)] | 02/10/2012 |
| Defendant provides Invalidity & Non-Infringement Contentions and documents | 30 days from the date of the Scheduling Order [R. 804.3(a)-(c)] | 02/10/2012 |
| Plaintiff provides Infringement Contentions and Responses to Invalidity Contentions and documents | 60 days from the date of the Scheduling Order [R. 804.3(d), (e)] | 03/12/2012 |
| Completion of fact discovery | | 04/20/2012 |
| Deadline for amending pleadings and adding parties | | The date of the close of fact discovery |
| Opening Expert Reports on issues for which the party bears the burden of proof | | The later of 05/04/2012 or 2 weeks after close of fact discovery |
| Responsive Expert Reports | | The later of 06/01/2012 or 4 weeks after Opening Expert Reports |
| Expert depositions begin | | The later of 06/04/2012 or 10 days after Responsive Expert Reports |

| | | |
|---|---|---|
| Close of expert discovery | | The later of 06/15/2012 or 10 days after expert depositions begin |
| Dispositive Motions and Opening Briefs | | Not before 04/20/2012 |
| Oppositions to Dispositive Motions | Within 14 days of the service of the motion [R. 105.2(a)] | Within 14 days of the service of the motion [R. 105.2(a)] |
| Replies to Dispositive Motions | Within 14 days of the service of the Opposition Briefs [R. 105.2(a)] | Within 14 days of the service of the Opposition Briefs [R. 105.2(a)] |
| Plaintiff provides draft Pretrial Order | 14 days before the Pretrial Order is due [R. 106.3] | 08/13/2012 |
| Defendant provides revisions and additions to Pretrial Order | 7 days before the Pretrial Order is due [R. 106.3] | 08/20/2012 |
| Deadline for submission of Pretrial Order | 7 days before the Pretrial Conference [R. 106.4(a)] | 08/27/2012 [1 month prior to the date set for Trial] |
| Trial | | 09/27/2012 |

4. **Issues Regarding Disclosure And Discovery Of Electronically Stored Information**

Pursuant to the District of Maryland's Suggested Protocol for Discovery of Electronically Stored Information, the parties have conducted initial discussions concerning electronic discovery and have agreed further to discuss electronic discovery issues as they arise.

5. **Issues Regarding Claims of Privilege**

The parties agree that the proposed Protective Order should include a claw-back provision that ensures the parties do not inadvertently waive privilege during document production.

6. **Changes to Limitations on Discovery**

a. **Genzyme's Statement**

At the outset of these litigations in 2010, Watson asked to suspend the above-captioned cases pending settlement discussions. Based upon the initial settlement terms

proposed by Watson, Genzyme agreed not to hold a scheduling conference and, instead, to continue in good faith to negotiate. Settlement negotiations with Watson continued while discovery was conducted in the Related Actions.

Discovery in the Related Actions is now complete. Genzyme has incurred considerable discovery costs, has made an extensive document production, and has produced for deposition the three inventors of the patent-in-suit, the attorney responsible for its prosecution, and two corporate witnesses from Genzyme.

During recent discussions, it was conveyed that Watson's counsel misrepresented its authority to negotiate critical settlement terms. But for these misrepresentations, Genzyme would have sought an initial scheduling conference and consolidation of these actions with the Related Actions for the purposes of discovery.

Watson now argues that there should be no limitation on its ability to take discovery from Genzyme in these actions. Watson could, however, have participated in discovery in the Related Actions. Watson chose not to. Having acted in good faith and in reliance on the representations of Watson's counsel, Genzyme should not now be forced to incur the considerable expense and inconvenience of repeating discovery. Accordingly, Genzyme proposes that Watson receive a copy of Genzyme's Rule 34 production, written discovery responses, and depositions given by it and its current and former employees in the Related Actions. This discovery was taken by three sophisticated defendants with the same goal as Watson—invalidating the patent-in-suit. Genzyme also agrees to further discovery upon a showing of good cause by Watson.

By reason of Watson's actions, Genzyme has not yet had an opportunity to take any discovery of Watson, and believes that it should be entitled to take discovery in accordance

with the Federal Rules of Civil Procedure.

Finally, Genzyme proposes forgoing claim construction and that the construction ordered by this Court in the Related Actions apply to the above-captioned cases.

### b. Watson's Statement

Watson proposes that the limits provided by the Federal Rules of Civil Procedure and the Local Rules of this Court shall apply in these cases.

Watson agrees with Genzyme's proposal to forgo claim construction, so long as the claim construction ordered in the Related Litigations is treated as the law of the above-captioned cases and based on the understanding that only claim 22 of the '775 patent is at issue in this litigation.

However, Watson disagrees with Genzyme's proposal to preclude Watson from taking any discovery of its own in this case. Watson should have the ability, guided by its own counsel, to develop its own defenses in this case according to its own theories. Moreover, Genzyme's proposal would deprive Watson of its ability to develop defenses to any arguments Genzyme intends to make against Watson that Genzyme is not making in the Related Actions. Watson does intend to develop its defenses as efficiently as possible and make use of the discovery other parties already have obtained from Genzyme. To that end, Watson proposes that by January 18, 2012, Genzyme shall provide Watson a copy of Genzyme's Rule 34 production, written discovery responses, and depositions given by it and its current and former employees in the Related Actions. The parties would then treat such discovery materials as if they had been taken in the above-captioned cases. Watson would then use its best efforts to take discovery only as necessary to supplement the discovery already taken. For instance, should Watson determine that it needs to depose a Genzyme witness deposed by a defendant in the Related

Actions, it would endeavor not to repeat questioning from the prior deposition, except to the extent necessary to provide foundation for new questions.

Genzyme's statements regarding settlement negotiations are an incomplete and misleading recitation of events and do not warrant denying Watson the ability to take discovery in this case. Watson negotiated at all points in good faith and made Genzyme aware of a mistake it made regarding a settlement term in July 2011, five months before Genzyme took any action to move this case forward. Watson was not free to ask questions at depositions in cases to which it was not a party. The plan set forth by Watson provides an efficient means of completing discovery in this case while preserving Watson's ability to conduct its own defense of the patent infringement charges against it.

### 7. Protective Order

The parties expect to present a stipulated protective order for entry by the Court by January 20, 2012. The parties agree that, pending the entry of such order, the discovery and initial disclosures deemed confidential by a party shall be produced to the adverse party for outside counsels' eyes only, solely for purposes of these actions, and shall not be disclosed to the client or any other person.

### 8. Trial Date and Estimated Length of Trial

The parties expect to be ready for trial by September 27, 2012. This trial date coincides with the trial date of the Related Actions. The parties estimate the length of trial to be between three (3) and five (5) days.

### 9. Alternative Methods of Resolution

At this time, the parties do not believe that this case is appropriate for voluntary arbitration (pursuant to L. Civ. R. 201.1 or otherwise), mediation (pursuant to L. Civ. R. 301.1 or

otherwise), appointment of a special master or any other special procedure. The parties will revisit the issue after completion of fact discovery.

### 10. Trial Before Magistrate Judge

The parties do not consent to trial by a Magistrate Judge.

### 11. Settlement Negotiations

The parties are in on-going settlement discussions.

[*Signature block on following page.*]

| Attorneys for Plaintiff<br>Genzyme Corporation | Attorneys for Defendant<br>Watson Laboratories, Inc |
|---|---|
| /s/<br>Geoffrey H. Genth (Bar No. 08735)<br>George E. Brown (Bar No. 14681)<br>KRAMON & GRAHAM P.A.<br>One South Street, Suite 2600<br>Baltimore, MD 21202<br>Phone: (410) 752-6030<br>Facsimile: (410) 539-1269 | /s/<br>Joshua A. Glikin (Bar No. 26853)<br>BOWIE & JENSEN, LLC<br>29 W. Susquehanna Avenue<br>Suite 600<br>Towson, Maryland 21204<br>Phone: (410) 583-2400<br>Fax: (410) 582-2437<br>glikin@bowie-jensen.com |
| Of Counsel<br>Scott K. Reed<br>Filko Prugo<br>Donald J. Curry<br>Brian O'Reilly<br>Charlotte Jacobsen<br>Jason E. O'Leary<br>FITZPATRICK, CELLA, HARPER & SCINTO<br>1290 Avenue of the Americas<br>New York, NY 10104-3800<br>Phone: (212) 218-2100<br>Facsimile: (212) 218-2200 | Of Counsel<br>John L. North<br>Laura F. Fritts<br>KASOWITZ BENSON TORRES & FRIEDMAN LLP<br>1360 Peachtree Street, N.E.<br>Suite 1150<br>Atlanta, Georgia 30309<br>Phone: (404) 260-6080<br>Fax: (404) 260-6081<br><br>Norman E.B. Minnear<br>KASOWITZ BENSON TORRES & FRIEDMAN LLP<br>1633 Broadway<br>New York, New York 10019<br>Phone: (212) 506-1700<br>Fax: (212) 500-1800 |