# WINSTON & STRAWN LLP

| | | |
|---|---|---|
| 214 NORTH TRYON STREET<br>CHARLOTTE, NORTH CAROLINA  28202-1078 | 35 WEST WACKER DRIVE<br>CHICAGO, ILLINOIS 60601-9703 | 200 PARK AVENUE<br>NEW YORK, NEW YORK 10166-4193 |
| 43 RUE DU RHONE<br>1204 GENEVA, SWITZERLAND | (312) 558-5600 | ONE RIVERFRONT PLAZA<br>NEWARK, NEW JERSEY 07102-5401 |
| 11TH FLOOR, GLOUCESTER TOWER,<br>THE LANDMARK, 15 QUEEN'S ROAD CENTRAL<br>HONG KONG | FACSIMILE (312) 558-5700 | 25 AVENUE MARCEAU<br>CS 31621<br>75773 PARIS CEDEX 16 |
| 99 GRESHAM STREET<br>LONDON EC2V 7NG | www.winston.com | 101 CALIFORNIA STREET<br>SAN FRANCISCO, CALIFORNIA 94111-5802 |
| 333 SOUTH GRAND AVENUE<br>LOS ANGELES, CALIFORNIA 90071-1543 | | 1700 K STREET, N.W.<br>WASHINGTON, D.C. 20006-3817 |
| 4 STASOVOY ULITSA<br>119071 MOSCOW, RUSSIAN FEDERATION | | |

June 8, 2012

**VIA ECF FILING**

The Honorable J. Frederick Motz
United States District Court for the
District of Maryland
Baltimore Division
101 W. Lombard Street
Baltimore, MD 21201

      **Re:**    *Genzyme Corp. v. Impax Labs., Inc.*, 09-cv-653, 09-cv-846, 10-cv-1791
               *Genzyme Corp. v. Sandoz Inc.*, 09-cv-1750, 10-cv-1715
               *Genzyme Corp. v. Endo Pharms., Inc.*, 09-cv-2589, 11-cv-1103
               *Genzyme Corp. v. Watson Labs., Inc.,* 10-cv-1323, 10-cv-1863

Dear Judge Motz:

      We represent Impax Laboratories, Inc. in connection with the above-referenced cases. We write on behalf of Defendants Impax Laboratories, Inc., Sandoz, Inc., Endo Pharmaceuticals, Inc. and Watson Laboratories, Inc. ("Defendants") with respect to a dispute that has arisen in connection with expert discovery.[1] Specifically, Defendants respectfully move this Court to strike new expert reports from Genzyme experts Alexander M. Klibanov (attached as Ex. A) and Sharon M. Moe, M.D. (attached as Ex. B), as well as new documents accompanying those reports, all served on June 1, 2012. Alternatively, should the Court decline to order that relief, Defendants request leave to file new responsive expert reports to address the information introduced for the first time in Genzyme's new reports, and further allow depositions of Drs. Klibanov and Moe on all newly introduced matter. (Genzyme has already offered this alternative resolution, and Defendants therefore understand it is unopposed.) Pursuant to Fed. R. Civ. P. 37(a)(1) and Local Civil Rule 104(7), counsel for Genzyme, Impax and Sandoz met in good faith and have been unable to resolve the current dispute without the Court's intervention.

---

[1] Defendants can immediately prepare a formal motion to address the issues discussed herein if that is the Court's preference.

I.      INTRODUCTION

This motion arises from Genzyme's recent attempt to serve two sur-reply expert reports and 535 pages of new document production that are prohibited under the Court's Scheduling Order in the *Genzyme v. Impax*, *Genzyme v. Sandoz*, and *Genzyme v. Endo* cases (the "Impax case"). Not only are sur-reply reports simply not allowed, but these come more than nine months after the deadline for serving expert reports and more than five months after the end of all expert discovery. To make matters worse, Defendants are in the midst of preparing for the trial on this matter on September 27. Defendants should be permitted to have their defenses heard in September without the prejudicial distraction of new, untimely expert discovery.

Genzyme knows it has no legitimate basis to wedge in new expert opinions this late in the game. It is instead opportunistically exploiting a separate expert discovery schedule in the closely related *Genzyme v. Watson* litigation. (*See* C.A. Nos. 1:10-cv-01323 and 1:10-cv-01863.) Although it started later than the Impax case, the Watson case involves the same patent, the same defenses to that patent, has the same fact discovery and is set to begin trial on the same day as the Impax case. Watson's approach to this litigation has been simply to maintain consistency with the other above-captioned cases. It thus comes as no surprise that Watson's expert disclosures did nothing but adopt verbatim the same opinions already offered by the experts in the Impax case. Watson did not offer a single new point of expert opinion.

Genzyme, however, now argues that the schedule in the Watson case allows it to serve a new, supplemental report on all Defendants for *all* cases. Genzyme's argument must fail. Allowing the new reports to stand in any case would result in a massive windfall to Genzyme at the Defendants' expense. All of these cases will be going to trial together in September, so allowing expert opinion in one case is to allow it in the others. It is thus patently unfair to allow Genzyme to offer new expert opinions based upon new documents at trial simply because the Watson case—which, at Genzyme's request, involved no new discovery—proceeded on an independent discovery schedule.

Should the Court nevertheless allow these untimely reports, Defendants respectfully request that they be granted leave to (1) serve and rely on expert reports that address the new opinions offered by Drs. Klibanov and Moe, and (2) depose Drs. Klibanov and Moe on their new opinions.

II.     FACTUAL BACKGROUND

The cases relevant to this motion are Hatch-Waxman Act patent infringement cases revolving around Defendants' efforts to develop generic sevelamer drug products for use by chronic kidney disease patients. Genzyme holds U.S. Patent No. 5,667,775 and alleges that claim 22 of this patent would be infringed by the manufacture and sale of Defendants' proposed products. Defendants contend that the sole asserted claim 22 of the '775 patent is invalid.

The Honorable J. Frederick Motz
June 8, 2012
Page 3

### A.     The Impax Case

Genzyme, Impax, Endo and Sandoz agreed to consolidate their cases for discovery in November 2009. (D.I. 62, at 8.)[2] The Court then entered a common case schedule culminating in a trial starting on September 27, 2012. (D.I. 64; D.I. 63-1, at 4.) The expert discovery allowed in the Impax case was unambiguously spelled out in that Order:

- **Opening expert reports** (for issues on which the serving party bears the burden of proof): 60 days after the Court's claim construction ruling;
- **Responsive expert reports**: 120 days after the Court's claim construction ruling;
- **Reply expert reports**: 150 days after the Court's claim construction ruling;
- **Export depositions begin**: 195 days after the Court's claim construction ruling; and
- **Expert depositions end**: 285 days after the Court's claim construction ruling.

(*Id*. at 3.) No other expert discovery or expert reports were allowed.

With the exception of a few modifications to the deadlines for each event, the parties adhered to this schedule. Defendants from the Impax case submitted their opening report on invalidity on April 18, 2011 from Dr. Geoffrey Coates. After several extensions, Genzyme submitted two responsive reports, one from Dr. Alexander Klibanov and one from Dr. Sharon Moe, on August 8, 2011. The Impax case defendants then submitted two reply reports on September 15, 2011, one from Dr. Gary Toback and another from Dr. Coates. These were the only reports served before the end of the expert discovery, just as the parties agreed. Expert depositions concluded on December 20, 2012. Dr. Klibanov and Dr. Moe admitted at their depositions that they had reviewed the reply expert reports of their counterparts—Dr. Coates and Dr. Toback, respectively. (Ex. C (Klibanov), at 325:5-13; Ex. D (Moe), at 63:16-24.)

The Defendants are currently preparing for the September 2012 trial based on the status of expert discovery just described.

### B.     The Watson Case

During fact discovery in the Impax case, Genzyme filed two additional lawsuits against Watson, another generic sevelamer applicant. (*See* C.A. Nos. 1:10-cv-01323 (filed May 24, 2010) and 1:10-cv-01863 (filed July 9, 2010) (together, the "Watson case").)

Genzyme argued that Watson should be forced to live with the discovery taken in the Impax case. It reasoned that "Genzyme should not…be forced to incur the considerable expense and inconvenience of repeating discovery" already taken in the Impax case. (D.I. 53, at 7, Civ. No. 10-1863.) Genzyme and Watson ultimately proposed that Watson receive from the Impax case Genzyme's full document production, its written discovery responses and the deposition transcripts of Genzyme witnesses. (*Id*.) Watson obtained no new discovery from Genzyme. Genzyme thus successfully required Watson to live with the record from the Impax case. The approach taken by

---

[2] Citations to docket entries correspond to the docket in C.A. No. 1:09-cv-00653 (JFM), unless otherwise specified.

Genzyme and Watson (until Genzyme's radical departure and submission of new expert reports) has been to achieve consistency with the other sevelamer cases.

Watson maintained that course of adopting the record from the Impax case during expert discovery. On May 4, 2012, it submitted brief statements from Dr. Coates and Toback affirming that Watson was adopting their expert opinions as already set forth in the Impax case and nothing more. (Exs. E and F, respectively.) As both experts stated:

> [T]he opinions I would offer [at trial in the Watson case] are set forth in the reports and deposition testimony…that were submitted/provided in connection with the [Impax case]. I hereby reaffirm and adopt my expert opinions provided in my expert reports and deposition for the [Impax case].

(Exs. E and F, at 2.) Neither expert offered any new opinions for the Watson case.

### C. The Untimely Klibanov and Moe Reports of June 1, 2012

Instead of accepting those statements and recognizing that there is no new expert discovery to respond to, Genzyme made substantial additions and modifications to the original Klibanov and Moe reports from August 2011 and served those on June 1, 2012. The modifications and additions Genzyme made between the reports are highlighted in Exhibits A and B. The changes fall into two general categories:

**1. New opinions offered to bolster Genzyme's experts' initial opinions.** (*See* Ex. A (Klibanov), ¶¶ 18, 32-35, 40, 46, 56, 69, 71, 76, 79, 86, 106, 115, 118, 135, 148, 152, 154, 163, 174, 185, 188; Ex. B (Moe), ¶¶ 33, 35, 37, 38.)

**2. New opinions offered to rebut the reply opinions offered by Defendants' experts and/or their deposition testimony.** (*See* Ex. A (Klibanov), ¶¶ 18, 32-35, 41-43, 53, 57, 93, 99, 131, 139-141, 145, 149-150, 164, 180; Ex. B (Moe), ¶¶ 44, 59-71 (in a section entitled "Dr. Toback's Expert Report," which was submitted only in the last round of allowed reply reports).

Genzyme also served on June 1, 2012, 535 pages of new documents.

### III. GENZYME'S NEW EXPERT REPORTS ARE UNTIMELY, IMPROPER AND SHOULD BE STRICKEN.

When a party ignores an entered scheduling order setting forth the deadlines for disclosing the expert information required by Federal Rule 26(a)(2), the appropriate sanction is to preclude the use of that information "at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The party who fails to timely disclose an expert report can only avoid that sanction if it demonstrates "substantial justification for her failure to comply with Rule 26(a)(2)(B)." *Carr v. Deeds*, 453 F.3d 593, 604–05 (4th Cir. 2006). To analyze that burden,

> a district court should be guided by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the

importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003). The exclusion of evidence is even more appropriate where the delaying party operates in bad faith or with deliberation. *Trilogy Commc'ns, Inc. v. Times Fiber Commc'ns, Inc.*, 109 F.3d 739, 745 (Fed. Cir. 1997). Genzyme's new expert reports and accompanying document production must be stricken under these standards.

### A. The New Reports Come As A Complete Surprise To Defendants.

There is no reasonable dispute that none of the Defendants expected or should have expected new opinions from Genzyme's experts. Defendants in the Impax case have not heard anything on the topic since the last expert deposition in December 2011. Watson likewise had no expectation of new opinions until mid-May, and did not know what the opinions were or their extent until June 1. The only thing it did was adopt earlier opinions from the Impax case.

### B. Defendants Cannot Cure The Surprise, Which Is Disruptive To Trial Preparations.

Given the surprise nature of these voluminous new expert reports and their service during trial preparations, Defendants cannot reasonably cure the resulting prejudice. Properly addressing the new opinions contained in these expert reports would require, at a minimum: a careful, studied review of all the new opinions; extensive research into those opinions; formulation of rebuttal opinions; extensive consultation with at least Drs. Coates and Toback, and possibly new experts who can rebut the new opinions; time by Drs. Coates, Toback and/or any other experts to draft the reports; preparing for and taking the depositions of Drs. Klibanov and Moe; and, if Genzyme asks, possibly preparing for and defending the depositions of Drs. Coates, Toback and any new experts. All of this assumes, moreover, that the experts are readily available to devote time to this work, and that counsel has available time between now and trial. The problem with that assumption is that the Defendants and their experts were reasonably not contemplating any expert discovery at all during this period, and are instead planning on devoting available resources so they can have their patent defenses heard in September.

It took Genzyme and its experts almost four months to write the initial rebuttal reports of Drs. Klibanov and Moe, and they have been working since December 2011 to provide the additional opinions contained in the new reports. If Defendants took that same four months to write rebuttal reports—and they certainly should have that time in view of the fact that Genzyme took that long to do scheduled rebuttals and an additional six months to write improper supplemental reports—the trial would be over before any of the new expert depositions could take place.

### C. The New Reports Contain Opinions Directly Related To Defendants' Patent Invalidity Challenge.

There is also no dispute that the new opinions offered by Drs. Klibanov and Moe are directly related to Defendants' invalidity challenge. In particular, Defendants allege that the asserted claim of the '775 patent is invalid as an impermissible instance of double-patenting, as anticipated, as obvious, and for failure to meet the written description and enablement requirements of 35 U.S.C. §

112. Each of the new opinions offered by Drs. Klibanov and Moe purports to be directly relevant to one or more of those issues, and thus purports to bear on the main issues in the case.

### D. Genzyme Did Not Disclose The New Reports In Good Faith.

Genzyme has no reasonable explanation for these untimely served new opinions. Its own actions confirm that there is no basis for serving them as part of the Impax case. If Drs. Klibanov and Moe truly thought they needed to supplement their last permissible reports or respond to the Coates and Toback reply reports or depositions, they have had since at least December 2011 to try that. They never gave any indication that they thought supplementation was appropriate until now. Genzyme is thus clearly using the excuse of the Watson discovery schedule to improperly inject new opinions in the *earlier* Impax case. In contrast to its own earlier expressed concerns that the Watson cases would allow Defendants to obtain a strategic advantage, Genzyme is now the party using the existence of the Watson cases to attempt to improve the record on which this case will go to trial.

The Watson case provides no basis for Genzyme to try to improve its existing expert record because Watson offered no new opinions. It is no excuse to argue that Watson initially indicated it would offer opinions set forth in the reply reports of Drs. Coates and Toback, and that Genzyme has the right to submit a rebuttal report in the Watson case. Genzyme had no right to respond to those reports in the Impax case, and it should not be given the windfall of a chance to respond to them in the Watson case. *See Rambus, Inc. v. Infineon Techs. AG*, 145 F. Supp. 2d 721, 727-731 (E.D.Va. 2001) (striking untimely reports where Rambus "belatedly revised its expert reports to cover the assertedly 'new' construction" raised months prior in claim construction briefing). Further, Drs. Klibanov and Moe had both reviewed the Coates and Toback reply reports from the Impax case when they were deposed in December 2011. That they waited until some six months later to serve what they deem "supplemental" reports reflects that (1) they knew supplementing in the Impax case was inappropriate, and (2) they are opportunistically exploiting the separate scheduling the Watson case. That gamesmanship must not be rewarded.

### E. The New Reports Should Not Be Allowed As Supplemental Reports Under Rule 26(e) In The Impax Case.

Genzyme gains no traction simply because it calls the reports "supplemental" as they relate to the Impax case. The new opinions are not in the nature of the supplemental information permitted under Federal Rule 26(e).

As for the new opinions offered in response to Dr. Coates's opening expert report, Genzyme has no basis for arguing that they could not have been included in the initial Genzyme rebuttal reports submitted in the Impax case. Those experts had almost **four months** from the date of the opening report in the Impax case to prepare their rebuttals, and had access to Defendants' invalidity contentions for far longer than that. Moreover, they do not cite a single reference or fact that became available only after their rebuttal reports or depositions. Supplementation merely because they now want to bolster their opinions with previously available information is not allowed under Rule 26(e) or any other provision of the Federal Rules. *See, e.g.*, *Khosmukhamedov v. Potomac Elec. Power Co.*, No. 11–449, 2012 WL 1670152, at *3 (D.Md. May 11, 2012) (finding "supplemental" expert report served after deadline for expert disclosures improper because it

presented "new opinions, rather than supplemental information regarding the" originally served report.); *Presstek, Inc. v. Creo, Inc.*, 2007 DNH 44, 2007 WL 983820, *5 & *7 (D.N.H. 2007) ("Rule 26(e) cannot reasonably be read to encompass expert disclosures that merely serve to bolster previously disclosed opinions without compromising the default discovery schedule envisioned by Rule 26(a)(2)(C).").

As for the new opinions offered to address the reply opinions of Drs. Coates and Toback, it is critical to bear in mind that Genzyme's experts were not allowed to respond at all in writing to the reply opinions of Drs. Coates and Toback in the Impax case. Thus, the new opinions are clearly not "supplemental" because there are no initial reply opinions on which they build. *E.g. O2 Micro Intern. Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355 (Fed. Cir. 2006) (affirming trial court's exclusion of supplemental expert reports to address issues raised in opponent's rebuttal report); *General Elec. Co. v. Sonosite, Inc.*, 641 F. Supp. 2d 793, 799 (W.D. Wis. 2009) ("[A] supplemental report is not an opportunity to rebut issues raised in defendant's rebuttal expert report."); *Vnus Med. Techs. Inc. v. Biolitec*, No. 08–3129, 2010 WL 2629714, at *5–6 (N.D.Cal. June 29, 2010) (excluding report submitted a month late and under pretense of it being a rebuttal report, noting "In effect they ask this Court to give them double the opportunity to address the non-enablement issue."). Accordingly, these reports cannot be construed as mere "supplements" and should be stricken.

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant this Motion to Strike or, in the alternative, grant Defendants leave to submit reply expert reports.

We appreciate Your Honor's attention to this matter, and are available at the Court's convenience to discuss the requested relief discussed above.

Respectfully Submitted,

Kevin E. Warner

Attorney for Impax Laboratories, Inc.

cc: Counsel of Record