

# Fitzpatrick

FITZPATRICK, CELLA, HARPER & SCINTO

BRIAN D. O'REILLY
boreilly@fchs.com
212-218-2260

www.fitzpatrickcella.com

NEW YORK
1290 Avenue of the Americas
New York, NY 10104-3800
T 212-218-2100
F 212-218-2200

June 13, 2012

<u>VIA ECF FILING</u>

The Honorable J. Fredrick Motz
United States District Court for the
District of Maryland
Baltimore Division
101 W. Lombard Street
Baltimore, MD 21201

Re:    *Genzyme Corp. v. Impax Labs., Inc.*, 09-cv-00653, 09-cv-00846, 10-cv-01791
       *Genzyme Corp. v. Sandoz Inc.*, 09-cv-01750, 10-cv-01715
       *Genzyme Corp. v. Endo Pharms., Inc.*, 09-cv-02589
       *Genzyme Corp. v. Watson Labs., Inc.*, 10-cv-01323, 10-cv-01863

Dear Judge Motz:

We represent Genzyme in connection with the above-captioned cases and write in response to Defendants' June 8, 2012 letter requesting the Court strike Genzyme's expert reports in those cases.

The Defendants have requested that the Court strike the expert reports Genzyme served on June 1, 2012, or in the alternative grant Defendants leave to file supplemental expert reports in response to those reports. Defendants argue that Genzyme should not be allowed to submit expert reports in either the Watson or the Non-Watson Cases[1] because Watson adopted the same positions as the experts in the earlier Non-Watson Cases. Genzyme disagrees.

Genzyme properly served reports from its two expert witnesses, Drs. Alexander M. Klibanov and Sharon Moe, on June 1, 2012 in accordance with the Scheduling Order entered in the Watson

---

[1] The "Non-Watson Cases" refers to Civil Action Nos. 09-cv-00653, 09-cv-00846, 10-cv-01791, 09-cv-01750, 10-cv-01715 and 09-cv-02589 between Genzyme and Defendants Impax Laboratories, Inc., Sandoz, Inc. and Endo Pharmaceuticals, Inc. These Defendants are collectively referred to as the "Non-Watson Defendants."

The Honorable J. Frederick Motz
June 13, 2012
Page 2

Case.[2] That Scheduling Order explicitly allowed Genzyme to submit expert reports, and until this motion to strike, Watson had not objected to the service of those expert reports.

Genzyme's service of its reports on the Non-Watson Defendants was also proper. All Defendants have known since January 18, 2012, when the Scheduling Order was entered, that Genzyme intended to submit expert reports in the Watson Case. All Defendants recognize that the opinions expressed at the trial of the Watson Case, will be opinions expressed in all cases at trial. Genzyme's offer to the Non-Watson Defendants to participate in the depositions of Genzyme's expert witnesses and serve additional supplemental reports cures any "surprise" the Non-Watson Defendants could have experienced upon service of the expert reports. Moreover, Defendants' admission that there is time for additional supplemental reports belies their argument that inclusion of these reports in the cases prevents Defendants from properly preparing for trial.

A.   **Genzyme's Expert Reports Are Undeniably Proper in the Watson Case: Until the Motion to Strike, Watson Did Not Object to Genzyme's Expert Reports.**

Simply stated, Genzyme is complying with the Scheduling Order in the Watson Case. The Scheduling Order states that Watson was to serve expert reports on May 4, 2012, Genzyme was to serve expert reports on June 1, 2012, and expert depositions are to occur between June 4 and 15. Pursuant to that Schedule, Watson served expert reports adopting the positions from the Non-Watson Cases. Genzyme then served its expert reports on June 1, largely adopting the positions it took in the Non-Watson Cases, but including some supplemental opinions. Genzyme also sought to schedule the expert depositions, but that scheduling is now on hold pending resolution of Defendants' motion to strike.

Importantly, Watson has never objected to Genzyme's expert reports. During negotiations over the Scheduling Order for the Watson Case, a dispute arose as to the timing of Genzyme's responsive expert reports, but there was never any debate whether Genzyme was entitled to serve responsive reports. Following service of Genzyme's responsive expert reports, Watson and Genzyme scheduled depositions of Genzyme's experts, again with no objection to the propriety of the reports. Indeed, Watson's counsel did not even take part in the meet and confer on this discovery dispute.

Genzyme's earlier position that Watson should have limited fact discovery is not inconsistent with Genzyme's position that it has the right to submit expert reports. Those are two separate positions with separate bases. Genzyme took the position that Watson should not be permitted to take fact discovery beyond that conducted in the Non-Watson Cases without a showing of good cause because Watson's misrepresentations during settlement discussions had led Genzyme to the delay in litigating with Watson. But for those misrepresentations, Genzyme would have sought an initial scheduling conference and consolidation of the Watson Case with the Non-Watson Cases for the purposes of fact discovery. By contrast, Genzyme's position on the expert

---

[2] The "Watson Case" refers to *Genzyme Corp. v. Watson Laboratories, Inc.*, Civil Action Nos. 10-cv-01323, 10-cv-01863.

The Honorable J. Frederick Motz
June 13, 2012
Page 3

reports is based on the current Scheduling Order. Both Genzyme and Watson expressly agreed to a separate expert discovery schedule with time for reports and depositions. Neither Watson nor the Non-Watson Defendants can now claim that new expert reports were not contemplated in the Watson Case.

**B.    Genzyme Disclosed the Reports in the Non-Watson Cases in Good Faith: Genzyme Gave the Non-Watson Defendants Advance Notice of the Reports.**

Understanding that the Watson Case and the Non-Watson Cases will be tried together, Genzyme notified the Non-Watson Defendants on May 25 of its impending expert reports in the Watson Case and invited the Non-Watson Defendants to take part in the depositions.

Defendants argue that Genzyme is attempting to "game" the system. On the contrary, Genzyme's actions were designed in good faith to provide the Non-Watson Defendants every opportunity to fairly participate in the Watson Case. As Defendants stated in their letter, if an expert opinion is expressed in one case, it will be expressed in all cases at trial. Genzyme believes its expert reports are proper in the Watson Case. Had Genzyme not served the supplemental expert reports on the Non-Watson Defendants, the Non-Watson Defendants would not be able to take part in the related expert depositions and would surely not be able to serve supplemental rebuttal reports, two demands the Non-Watson Defendants now make to address the opinions that Genzyme's experts intend to offer at the Watson trial. Thus, rather than being calculated to prejudice the non-Watson Defendants, Genzyme's expert reports were instead served upon them for their benefit.

In sum, Genzyme gave the Non-Watson Defendants notice of the expert reports and depositions and served the expert reports on the Non-Watson Defendants in order to facilitate an orderly case administration. That is the opposite of "gaming" the system.

**C.    Defendants Cannot Claim Surprise: The Scheduling Order Explicitly Allowed for Expert Reports in the Watson Case.**

Defendants claim that they were surprised by Genzyme's submission of expert reports and had no expectation Genzyme would submit new opinions. But such "surprise" is not supported by the facts.

The Scheduling Order, jointly submitted by Genzyme and Watson, indicates that both parties intended to pursue expert discovery both in the form of expert reports and expert depositions. Indeed, Watson represented to the Court in the Scheduling Order that it intended to "develop its own defenses in this case according to its own theories." Watson's invalidity contentions served on February 10, 2012, confirmed Watson's independent approach. In those contentions, Watson cited additional prior art and made invalidity allegations that had not been raised by the Non-Watson Defendants nor addressed by their experts. In fact, until May 2, two days before Watson was due to serve its expert reports, Genzyme did not know the identity of Watson's expert

The Honorable J. Frederick Motz
June 13, 2012
Page 4

witnesses. And until May 4, 2012, when Watson served its expert reports, Genzyme had no idea Watson would adopt the expert positions taken in the Non-Watson Cases.

Genzyme presumes that the Non-Watson Defendants, like Genzyme, were unaware that Watson intended to hire the experts in the Non-Watson Cases and have them adopt the same positions. Consequently, the Non-Watson Defendants must have understood the possibility that Watson would submit new reports and that Genzyme would respond to those new reports.

To allow Defendants to block Genzyme from submitting its expert reports would give Defendants an unfair advantage in these cases. Under Defendants' view of the world, Defendants reserved the right to coordinate and serve new reports in the Watson Case, reports that would have affected all of the above-captioned cases. But because Defendants decided against doing so, Defendants believe they have the right to preclude Genzyme from serving expert reports in the Watson Case. In essence, the Non-Watson Defendants want the option to decide together with Watson whether the parties get to serve expert reports in the Watson Case. That, however, is improper.

**D. Genzyme's Expert Reports Will Not Disrupt Trial: The Court Scheduled the Reports and Depositions with Full Knowledge of the Trial Date.**

Defendants' argument that not striking Genzyme's expert reports would materially disrupt trial preparations is also not well grounded in the facts. The Court in conjunction with Genzyme and Watson created the Watson schedule anticipating that the parties would complete expert discovery in June and have time to prepare for trial in September. Moreover, despite a September trial date, it is Defendants that argue that they should have the right to submit further supplemental expert reports if the Court does not strike Genzyme's reports. Such a position, which would require further expert discovery even closer to trial, is contrary to the notion that permitting Genzyme's expert reports would disrupt a trial. In fact, expert discovery would have been completed by the scheduled dates if not for Defendants' motion to strike. Because Genzyme has done nothing but comply with the Court's Scheduling Order in serving its expert reports, Defendants are solely to blame for any disruption to the trial.

Further, Defendants' argument that it does not have sufficient time to respond to "these voluminous new expert reports" distorts the facts. Genzyme's two expert reports combined have only approximately 20 pages of new opinion. Contrary to Defendants' allegations, Genzyme has not had since December 2011 to draft these reports. Because Genzyme could not predict the substance of Watson's expert reports, Genzyme did not know prior to Watson's service of its expert reports on May 4 that Watson was going to adopt the reports in the Non-Watson cases. Accordingly, Genzyme's expert witnesses could not start drafting rebuttal reports until after Watson served its reports such that Genzyme had only one month to draft expert reports.

The Honorable J. Frederick Motz
June 13, 2012
Page 5

                       *                       *                       *

Finally, Defendants state that Genzyme has acquiesced in Defendants' demands to file new rebuttal supplemental reports. That is not true. As part of an attempt to avoid unnecessary discovery disputes, Genzyme offered, as a compromise, to agree not to oppose Defendants' request to serve rebuttal supplemental reports if Defendants did not move to strike Genzyme's reports—a proposal Defendants rejected.

Genzyme does not believe it is fair that Defendants have taken Genzyme's offer of compromise and represented it as Defendants' worst case scenario. Genzyme had the right to serve reports in the Watson Case, without leave of the Court. Defendants, however, are not permitted in the Court's Scheduling Order to respond to that last round of reports. Nevertheless, if the Court deems it reasonable, Genzyme is still amenable to a short expert discovery schedule followed by depositions of all the experts as a compromise solution to the current dispute.

Respectfully submitted,

Brian D. O'Reilly
Attorney for Genzyme Corp.

cc: counsel of record